Good morning, and may it please the Court, I am Nicole Saharsky for the Appellant. On page 25 of the red brief, Fandango argues that the only aspect of the claim that Maxell identifies as an inventive concept is the use of the two time limits on rentals, which is the same idea found abstract in Step 1. Are there features beyond those rules that provide the claims with an inventive concept in Alice Step 2? Yes, we think this is a Step 1 case, and I can explain why, but to specifically answer your question, this is an invention if you look at the claim that has three components. First of all, there are two time periods that are controls that are used. There's this retention time period, and then there's the playback period. Second, in the first, I think, where-in clause, or second where-in clause, there is a set of rules that explains how the two time periods work together. Rules for when you're in one time period versus the other, etc., and then whether you can continue playing the audiovisual work. And then third, the control information is sent along with the file so that it operates on the file, even if the audiovisual file has been downloaded. And here's why that's important, to understand that this is a particular solution to a digital problem, a particular digital problem and a digital solution, as opposed to a range of solutions. Because what's happening here with the control information being sent on the file is that the rules can operate on the video, even if it's not connected to a network. A person can download a file onto the device that they're going to use, say, to watch a movie, and if the rules aren't met, then the file is not available any longer. It's as if the file disappears. That's not something that can happen in the bricks-and-mortar world with checking out a book from the library, a DVD, anything like that, because a person could keep the DVD or the book or whatever it is for a time period beyond what is authorized. But here we're talking about two time periods, the rules in which they're put together, and the way in which they operate. And so that really is subject matter that's patent-eligible. It's not the idea of a solution. It's a particular solution in the digital context. And that's where we think the district court here got it wrong, was it was looking at this patent, these patents, this representative claim, at way too high a level of generality. It, in Alice Step 1, said that this is just a patent that's directed to the idea of restricting access to a file based on rules. And saying that is like saying that a patent for a particular type of V8 engine is directed towards operating a car. It just doesn't account for the various particular limitations in the patent. And if this court's jurisprudence on Alice, I think, has taught us anything, it's you can't just come up with the highest level of abstraction possible. You have to actually look at, what does the claim do here? Is it a solution, or is it just the idea of a solution? And so here, those three components that I described are what provide the solution. And they are only minimally preemptive, because there are a number of other ways in the digital context that you could have a solution. So I'd like to talk a little bit more about that, what was in the prior art, and the particular innovation that Hitachi, now Maxell, made here. So at the time that this invention was made, it was 19 years ago, in the year 2000. And frankly, things were very different in terms of video downloads and video streaming. The specification in this case describes the prior art, which was quite minimal. It describes three ideas that were manifested in that. The 522 patent issued in 2017, right? Yes, but the priority date is in the year 2000. And so that is the relevant time period. There was originally a patent application filed in the year 2000 in Japan, then the application was filed in the US in 2001. There were continuation applications filed, but the relevant time period is what was happening in the year 2000. And things that might seem commonplace today were not commonplace at all then. What the specification tells us, in terms of the prior art, was that there were a few ideas out there, and some of them weren't related to time periods at all. One of the ideas was, we have a problem with a digital copy being able to be transmitted across networks, and an infinite number of copies made, so why not give a degraded copy so that you wouldn't want to copy it and send it and send it. So the first patent that's mentioned, the first reference, involves a degraded copy. The second reference that's mentioned involves controlling the number of copies. Only allow a person to make one copy. But that does not solve the problem in the same way that the time periods do here, because the person could keep watching that one copy over and over and over again, it could let all their friends watch the copy, etc. And then the third reference that's disclosed in the prior art is essentially a 90 minute playback period that's almost operating like a DVR recorder, where you could record what's happening in real time for 90 minutes, and then watch it back within the 90 minutes. And that's all that's disclosed. So what the patent here says, and the innovation here, is recognizing that you need to balance the rights of the copyright owners, who will have to pay for, especially distributors who will have to pay the copyright owners, for however many copies are sent out for people to watch, however long they're sent out to watch those copies. Balance that against the rights of the person who wants to watch the video, the user. And the innovation that the Hitachi engineers made here was to recognize that the user probably only wants to watch the video once, but it might not do it right away when it downloads the video, which is why they described a retention period, which could be something like 30 days in which you'd have to watch the video sometime within that retention period. But then also that there's a more narrow period, once you start watching the video, you basically have only a certain amount of time to watch it, and you can't watch it again. And that's when you look at the claims here, exactly what it says. It talks about reproducing the audio-visual information according to the control information. The first where-in clause talks about the two periods of time in the control information, the retention period, and then the playback period, and then the second where-in clause gives a series of rules that talks about where are you within those two periods, and if you're not within the rules that are set out, that it disables the start of a reproduction. It disables the watching the video. And so this is not the idea of restricting access in the abstract, or even restricting access based on time. There are particular time periods, particularly two different ones that are used together, which had not happened at all up to that point in the digital context, and then it's describing that they're sent along with the file. Can I ask you a housekeeping question before we end, which is, is there any, is there agreement that the claim 13 of the 522 is representative of all reasserted claims for one purpose? Yes, that's the representative claim, and there's no claim construction issue as it comes to the court. There was a question below about what control information means, but here I believe it is agreed upon that what we're looking at is essentially the three elements of this claim, which are the use of two controls, the rules by which they work together, and the fact that they're sent along with the audiovisual file. If I could just discuss a little bit more why it matters that they're sent along with the audiovisual file, because I think it's very important to preemptive effect. I mean, one of the things that this court and the U.S. Supreme Court have said in the Alice context is, you know, the concern about abstract ideas is that we don't want to take things off the table in terms of scientific and technological innovation. We don't want to take math formulas or laws of nature or natural phenomena off the table. So the question is, you know, is this a specific solution or is it taking too much off the table? And our answer is there are a number of possible solutions out there in the digital context. This is only one of them, and it is minimally preemptive. And if I could just give an example, which I think is pretty real world based on users today, you could imagine a circumstance which uses time limitations but is nothing like the claim that's here, in that there has to be some type of real-time control of the video file. So the video would have to be watched over – if the video were watched in real time and it was streamed, that you'd have to stream the control information along with the video, almost like the way that a cable box works, where you need to have a constant signal, and if the signal's not there, you can't watch it anymore. If the control information didn't say, okay, based on the rules, you couldn't watch it anymore. And that would be a solution where basically you'd have to be online the whole time and you could still use something like the control box. So what guidance do we have? I mean, I think you used the term minimally preemptive. The Supreme Court has made clear, has it not, it doesn't have to be a huge astronomical preemption issue. Right. But I don't know how we tease out what's minimally – sufficiently preemptive or minimally preemptive. So do you have any place we would look for guidance in that regard? Sure. I think you could look to other cases that this court has decided about a particular way of doing things, as opposed to – I mean, most of our – a very small number of our cases even deal with the preemption issue. I think that's just the case. I'm not clear exactly why. So do you have any particular case in mind? Sure. I would point the court to the McRow case, which had to do with using a set of rules to animate facial expression. I would also point the court to the Core Wireless case, which had to do with having an application summary window that allows users, especially on a small screen, to be able to access data more easily. But, you know, I think the reason that this court has addressed preemption is because when it's asked this question, you know, is this an invention that's directed to an abstract idea, you know, what the words – abstract idea themselves are hard sometimes to put some content on. And so the court has looked to the guidance from the U.S. Supreme Court about, you know, really what is it we're worried about. We're worried about taking too much off the table in terms of laws of nature, math formula, et cetera, et cetera. So here are we taking a lot off the table. I mean, I – the test is not preemption itself, but the fact that something leaves many other solutions open suggests that it is a specific solution and not just the idea of a solution. Why do you deal with BSG and SAP? Sure. So in the – both of those, I think – Because I think that's your problem. I'm sorry? I think that's your problem. Yeah, yeah. I'm happy – I'm happy to address those because I think that they're both fundamentally different. So the SAP case addressed essentially mathematical algorithms, so a method of using statistical analysis for investment information. And the court said this isn't telling us how to do it in any way connected to the physical world. It's essentially just math. And it doesn't matter if it's more specific math, it's math. And you can't take math functions and algorithms off the table because it will stop scientific innovation and development. And so I would put SAP, which had that language about a more narrow rule still not being sufficient, in broadly the math category. I'd put BSG in a slightly different category, which is taking a solution that exists in the bricks-and-mortar world and just doing it on a computer. And particularly doing something that this court has found is not – is abstract in a number of cases, which is collecting information, analyzing information, and reporting it back. So this was just a question about indexing with databases, and the supposed innovation in the BSG case was we're going to look at the past data that's been used to set parameters for a database. We're going to tell you what that is, and then you can decide whether you want to use those to set the parameters for your database. And I think this court said that's essentially something that you do in the bricks-and-mortar world when you're designing a database, or if you're designing a spreadsheet. It's just indexing. It's directed to the abstract idea of indexing. There's nothing special about using a computer. That's also, I think, the teaching of the Supreme Court's cases in Alice and Bilski. When you're just taking a bricks-and-mortar idea and there's nothing special about using the computer, that it's directed to an abstract idea. And so the difference, I think, between the BSG case and cases like it is that here we have a uniquely digital problem, and it required a uniquely digital solution. And I think looking at some of the real-world examples in the briefs is a good way to think about that, because I think one of the things Fandango suggested is this is just like Alice or Bilski because it's just like taking a book out from the library. And you're just putting in a rule that's saying you can only have the book out from the library for a certain number of days. And we don't think that's true, because the book from the library can't be perfectly reproduced at almost no cost. It can't be transmitted across networks nearly instantaneously. The digital problem is that you have potentially perfect, millions of perfect copies that could really hurt the rights of the copyright owner, and you needed a way to deal with that. And the solution of the fact that a copy would degrade or that you really couldn't make the world would not be a solution in the digital world. But there's something that you can do in the digital world that you can't do in the bricks and mortar world, which is you can essentially make the content disappear. If someone takes out a book from the library and they keep it for too long, at least under technology that I'm aware of, there's nothing that makes the book disappear. Someone could invent something like that, and that would be... Oh, they don't have to. I used to be in explosive ordnance in relation to NCO. Okay. There may well... With the libraries that I frequent, there is not any mechanism that causes the book to disappear after the 21-day period. But that is something that you can do in the digital world, and that's really the innovation here, is that you can have these two different time periods in these rules that operate on the files, so that the file is just no longer available, so that there's no opportunity to keep it for longer. There's no opportunity to send it on. There's no opportunity to make copies. You're well into your rebuttal, so I'm going to give you the first slide. Thank you. I'll reserve the remainder of my time. Thank you. Thank you. I think my librarian would like me to return to the panel, so... Chief Judge Brost, may it please the Court, my name is Steve Lieberman, and I represent the appellee. I'd like to start, if I may, with my friend's response to Judge Wallach's first question. She introduced an element, this control information being sent with the file, along with the file. That argument was never made in the appeal briefs to this Court, I believe. They were never made in the briefs to the District Court, and the reason they were never made is because that element does not appear in the claim. And that's what I'd like to focus this Court on, the claim, and it's the only claim that's not specific to this issue. If you look at the claim, it's not technological, and it's not specific in any way. There's no information about how the functional steps of transmitting, receiving, storing, or reproducing are achieved. In fact, there isn't even a mention of the computer in the claim. One could read that claim, I would submit, although you don't need to address this issue. Where are you? Claim 13. There's no reference to computer in the claim. So this is at page 322 of the appendix, I'm sorry, page 85 of the appendix, I apologize. There's no reference in there to a computer. There's no explanation as to how the transmitting, receiving, storing, or reproducing were achieved. Indeed, reading the claim literally, one could say that this claim covers a store clerk handing a videotape to a person, along with a written set of instructions which say, here are the rules about how long you can keep this and when you can play it. Moreover, there's a lot of reference in Maxell's brief to the user experience, and we know why it's in there. It's in there because you've got these three cases involving GUIs. But there's no GUI claimed in the claim. In fact, the claim doesn't even say whether the user is required to be told about these time periods or not. None of that is in there. The control information, as the parties have agreed, is just a set of temporal restrictions. My friend made reference to limitations on the number of copies. That's not in here. This case could be a completely different case if what it were about was this. Back at the time frame, and there's no evidence about this because the claim doesn't pose the solution. Back at the time frame, it was difficult or impossible to embed in digital media that you gave to somebody the ability to know when it first started playing, and the claim claims a solution to that. We've come up with a technological way of doing that. That's not in the claim. There's nothing about how you detect. There's nothing about how you turn it off. The turning off could just be some employee pressing a button manually. It's just not in the claim, and this is the only claim we're talking about. By the way, the only language that I think you could tie my friend's argument to her response to your first question was the language, according to the control information. That's not a construed term. I don't think you can fairly read the particular point that she made into that language. I would say that this case is very similar, indeed exceedingly close to the SmartFlash case, and is miles and miles away from the cases where this Court has held that there has been an improvement to the way the computer functions, a technological solution to a technological problem. We don't have any of that here. Now, I thought it was very interesting that Ms. Saharsky characterized this case as a step one case, and I think that was probably wise, although there was discussion of step two in the brief. This Court in BSG wrote, it has been clear since Alice that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than the ineligible concept. That was why I asked the question. I intuited that, Your Honor. And here, their argument below, and their argument in the briefs, was that what makes this significantly more, something different, is the concept of these two time periods. And they talk about how specific the time periods are. Let me just pose one example that I think points out how that argument doesn't work. Let's say that the second time period was, you can only watch the movie on weekends, or you can only watch the movie on Tuesday nights, or you can only watch the movie on Tuesday nights when in a time slot that's up against a particular program. That's essentially what they have. Now, it would be a very different analysis if you claimed it that way, and you said, and here is technologically how you do that. And here's why you couldn't do that with the prior art, and we fixed that. But that's not in the spec, it's certainly not in the claims, and it's not something that they've argued at all. So, again, looking at the case law, I was trying to find a case where this court had held that something was eligible as not reflecting, as not being directed to an abstract idea, where the language didn't appear in this court's decision about an improvement to computer technology or a technological solution to a technological problem, and I couldn't find one. I went through all of the cases, BASCM, DDR, NVIDIA, Pro, I thought you were going to tell me something new. No, no, no, no. I couldn't find one. All the cases, including the GUI cases, and I would say they're completely irrelevant here because there's no GUI in the claim, all of those cases talk about specific improvements to the way the computers operate. We don't have that here. They essentially, I thought they conceded that point in their briefing. I see that my friend is trying to sort of resurrect the argument that maybe there's some technological lacuna that you ought to read into the language according to the control information, but, again, it wasn't presented below, it wasn't presented on appeal, and it's not in the claim. The contrast to the McCrow case, I think this court is very familiar because McCrow is cited to this court and discussed by this court on a regular basis, how very tied in the claims in McCrow were to a specific technological improvement that was tied to a physical act, which is how do you make the faces, in an automated fashion, change when you're going from one sound to another sound. And you can hold up those two claims, not just the specificity of the sounds, I'm sorry, not just how technological the claim language sounds in McCrow, but when you really drill down into it, what you have there is something which was a really huge technological advance. What you have here is just the idea of two time periods, and while we're on two time periods, it's really only one time period. Because when you rent something, in every rental, an essential part of that is the time period. So every rental, every software license, is going to have a time period. So what additional did they put into it? They put in addition to it a second time period, which is that once you start watching it, you have a certain period of time during which you have to finish it. Sort of like a three-day pass or a seven-day pass at Disney World. I think we have your argument. Thank you. Thank you, Your Honor. Just briefly. Tell us where it is. I'm sorry. In 13, respond to your opposing counsel. Where is it? Sure. This language that refers to reproducing the audiovisual information according to the control information related to the audiovisual information. That describes the fact that the control information, it is reproduced according to the control information, which is related to the audiovisual information. It can only be played under those circumstances, which means the control information has to be there, sent, with the audiovisual information. This is also in another claim in the patent in 389. And the court took this as a given. This was not disputed below as a matter of claim construction. I'd point the court to the appendix pages 10 and 11, that the court below understood this to be a limitation of the claim. And so I think that's important. We're not talking about time periods in the abstract. We're talking about two time periods, specific rules, and a specific way that they work. And the district court here just can't be correct because it looked at this at way too high of a level of generality. This patent comes to the court with a presumption of validity. This is the type of thing that is eligible for patenting. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning. All rise.